IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

SCOT FAULKNER and
VICKI FAULKNER,

    Plaintiffs,

v.                                                      Civil Action No. 3:10-CV-12
                                                            (BAILEY)

ONEWEST BANK, FSB, and
INDYMAC MORTGAGE SERVICES,
a division of ONEWEST BANK, FSB,

    Defendants.

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

Currently pending before the Court is Defendant Onewest Bank, FSB's[1] Motion to Dismiss [Doc. 9], filed May 10, 2010. Plaintiff responded on June 3, 2010, and the defendant replied on June 10, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's motion should be **GRANTED IN PART**.

**BACKGROUND**

**I.    Factual Allegations**

The plaintiffs, Scot and Vicki Faulkner, allege the following facts in the challenged Complaint [Doc. 1]. On November 23, 2004, the plaintiffs entered into a home mortgage, secured by a deed of trust, with IndyMac Bank, FSB ("IndyMac") for the plaintiff's home

---

[1]Inasmuch as OneWest Bank, FSB does business as IndyMac Mortgage Services, the former's motion also represents the interests of the latter.

1

located in Harpers Ferry, West Virginia. ([Doc. 1] at ¶¶ 1, 17). In so doing, the plaintiffs executed a promissory note (the "Note") in favor of IndyMac in the amount of $576,000.00. (Id. at ¶ 17).

On September 11, 2009, IndyMac assigned its right, title, and interest in the mortgage to Deutsche National Trust Company, as trustee of the Home Equity Mortgage Loan Asset Backed Trust Series SPMD 2004-C Home Equity Mortgage Loan Asset Backed Certificates Series SPMD 2004-C under a December 1, 2004, pooling and servicing agreement. (Id. at ¶ 18). Upon information and belief, OneWest, F.S.B. ("OneWest") acquired, or received an assignment of, the rights set forth in the plaintiffs' mortgage, note, and deed of trust. (Id. at ¶ 19).

On August 14, 2009, nearly five years after the origination of the plaintiffs' loan, OneWest offered the plaintiffs a loan modification. (Id. at ¶ 35). The modification was subject to two conditions: (1) the plaintiffs' signature and return of the Modification Agreement along with a check for $2,806.13, representing the first modified monthly payment; and (2) verification that the plaintiffs' income qualifies for loan modification [Doc. 1-2]. The offer stated that it would expire on August 24, 2009. (Id. at 1).

On August 21, 2009, the plaintiffs accepted the specified terms of the Modification Agreement and complied with all of its terms and conditions, including delivery of the signed agreement along with the requested payment as well as the plaintiffs' tax returns and financial statements to OneWest. ([Doc. 1] at ¶¶ 36-37; [Doc. 1-2] at 7-10). Nevertheless, after this acceptance and performance, OneWest breached its obligations by rescinding the Modification Agreement. ([Doc. 1] at ¶ 38). OneWest proceeded to seek foreclosure of the real property. (Id. at ¶ 39). The plaintiffs retained legal counsel to assist

them in preventing the foreclosure sale. (Id. at ¶ 41). OneWest's breach of the Modified Agreement has caused both financial and emotional harm to the plaintiffs. (Id. at ¶ 43).

## II. Procedural History

On March 1, 2010, the plaintiffs brought suit in this Court against OneWest and IndyMac Mortgage Services, a division of OneWest ("IndyMac MS" or, collectively, "OneWest"), pursuant to state and federal law. The Complaint [Doc. 1] contains three counts.

Count I is based upon the origination of the plaintiffs' loan and arises under the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-2-122, *et seq.* ("WVCCPA"); the West Virginia Residential Mortgage Lender, Broker, and Servicer Act, W.Va. Code § 31-17-1, *et seq.* ("WV Mortgage Act"); the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"); and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"). ([Doc. 1] at ¶¶ 20-25). Count I alleges that IndyMac failed to provide and/or explain the applicable rescission notices, the "Good Faith Estimate" disclosures, and the HOEPA disclosures. (Id. at ¶¶ 22, 23, 25). In addition, Count I alleges that IndyMac led the plaintiffs to believe that "they would be better off refinancing their debt and that this loan was under fair terms of repayment without ballooning interest or pre-payment penalties" and that IndyMac directed the plaintiffs to "sign papers without [providing] copies in advance of the closing." (Id. at ¶¶ 21, 24).

Count II is based upon allegations of predatory lending and again raises violations of the WVCCPA, the WV Mortgage Act, TILA, and HOEPA. (Id. at ¶¶ 26-31). Specifically, Count II alleges that the Note appears to provide a payment schedule that does not result in continuous monthly reduction of the original principle in violation of W.Va. Code §§ 31-

17-8(m)(7) and 46A-4-109(5)(E), 15 U.S.C. § 1639(c-h), and 12 C.F.R. § 226.32. (Id. at ¶ 27). Moreover, Count II alleges that excessive fees and costs and finance charges were contained in the loan agreement. (Id. at ¶ 28). Finally, Count II alleges that the loan was unconscionable under W.Va. Code § 46A-2-121 and in violation of W.Va. Code § 31-17-8 and 15 U.S.C. § 1601, *et seq.* (Id. at ¶ 30).

Count III alleges breach of contract related to the Modification Agreement, which OneWest offered to the plaintiffs in August 2009. (Id. at ¶¶ 32-43). In support of this claim, the plaintiffs allege that OneWest offered a loan modification on August 14, 2009, which the plaintiffs accepted, and under which the plaintiffs began to perform, on August 21, 2009. (Id. at ¶¶ 35-37). According to the plaintiffs, however, OneWest then rescinded the Modification Agreement and sought foreclosure, which caused the plaintiffs financial and emotional harm. (Id. at ¶¶ 38-43).

On April 13, 2010, OneWest, noting that it does business as IndyMac MS, filed a timely Answer [Doc. 7]. Less than a month later, on May 10, 2010, OneWest filed the pending Motion to Dismiss [Doc. 9]. In its motion, OneWest argues that the plaintiffs fail to state a claim upon which relief can be granted. ([Doc. 9] at 1-3). First, OneWest argues that all the claims in Counts I and II fail as a matter of law because claims based upon loan origination and predatory lending cannot be maintained against OneWest as a mere servicer of the plaintiffs' loan. ([Doc. 10] at 4-6). However, even if OneWest is an assignee or holder, the state law claims in Counts I and II must fail because they are preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, *et seq.* ("HOLA"). (Id. at 6-9). Moreover, OneWest asserts, the plaintiffs' WVCCPA claims are time-barred. (Id. at 12). With regard to the federal claims in Counts I and II, OneWest argues that the plaintiffs'

allegations are insufficient to trigger HOEPA, which applies only to high-risk residential mortgage loans, and that the HOEPA and TILA claims are also time-barred. (Id. at 9-12). Finally, assuming the plaintiffs' reference to a "Good Faith Estimate" in Count I was an attempt to allege a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), OneWest argues that said claim must fail as RESPA provides no private right of action for such a violation. (Id. at 13).

OneWest also argues that Count III must be dismissed as a matter of law. (Id.). Specifically, OneWest argues that its offer regarding the Modification Agreement was conditional upon verification of the plaintiffs' income, and thus, the agreement did not automatically become enforceable upon the plaintiffs' assent to its terms. (Id. at 13-14). OneWest further argues that the Modification Agreement states that it will not be effective until signed by IndyMac MS and returned to the plaintiffs. (Id. at 14). Insofar as the plaintiffs fail to allege that they received a signed copy of the Modification Agreement, the agreement did not become enforceable, and thus, there can be no breach of contract. (Id. at 15).

On June 3, 2010, the plaintiffs filed their Response [Doc. 14], stating that they will voluntarily dismiss Counts I and II if OneWest "provides proof that it only obtained servicing rights and is not a 'holder in due course' of the note." ([Doc. 14] at 3). Further, the plaintiffs argue that the issue of preemption is moot, assuming OneWest proves it is merely a servicer of their loan. (Id.). With regard to Count III, however, the plaintiffs contend they have stated a claim. (Id.). Specifically, the plaintiffs claim that the conditions of OneWest's modification offer were satisfied, and accordingly, the Modification Agreement is enforceable. (Id.). Finally, the plaintiffs claim that the Home Affordable Modification

Program ("HAMP") required OneWest to apply the payment received by the plaintiffs "regardless of whether they sent in the executed documents or income verification." (Id. at 4.).

On June 10, 2010, OneWest filed its Reply [Doc. 16], reasserting its argument that the plaintiffs' state and federal claims should be dismissed. ([Doc. 16] at 7). In response to the plaintiffs' potential voluntary dismissal of Counts I and II, OneWest states that it "intends to provide the requested documentation to the Plaintiffs . . .." (Id. at 1). However, OneWest claims that its motion "state[s] viable grounds for dismissing Counts I and II of the Complaint regardless of whether OneWest is the servicer or is the holder or assignee of the subject loan." (Id.). With regard to Count III, OneWest again argues that the Modification Agreement never became enforceable. (Id. at 3-5). As further support for the dismissal of Count III, OneWest cites West Virginia's statute of frauds, W.Va. Code § 55-1-1, which requires that the Modification Agreement have been signed by OneWest. (Id. at 5-6). Finally, OneWest argues that its participation in the HAMP does not establish that the Modification Agreement was enforceable, nor does the HAMP create a private cause of action. (Id. at 6-7).

The Court has received no notice from either party regarding the plaintiffs' potential voluntary dismissal of Counts I and II. Accordingly, this Court will decide the disposition of those counts on their merits.

## DISCUSSION

### I. Motion to Dismiss Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept

the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." ***Bell Atl. Corp. v. Twombly***, 127 S.Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

## II.     HOLA Preemption Standards

The HOLA empowers the Office of Thrift Supervision ("OTS") "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." ***In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation***, 491 F.3d 638, 642 (7th Cir. 2007); *see* 12 U.S.C. § 1464. Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 (the "Regulation"), which is entitled to "no less pre-emptive effect than federal statutes." ***Fidelity Fed. Sav. and***

7

*Loan Ass'n v. de las Cuesta*, 458 U.S. 141, 153 (1982). The Regulation provides that:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, *without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section* . . ..

12 C.F.R. § 560.2(a) (emphasis added).

In section 560.2(b), the OTS provided illustrative examples of the types of state laws preempted. Among these listed examples, preempted state laws "include, without limitation, state laws purporting to impose requirements regarding":

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> . . .

12 C.F.R. § 560.2(b)(4), (5), and (10).

Moreover, the OTS expressly provided, in section 560.2(c), categories of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) . . .." 12 C.F.R. § 560.2(c).

Finally, the OTS has also outlined the proper analysis for courts to employ when confronted with interpretive questions under section 560.2(a):

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, *Lending and Investment*, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996); *see also* **Casey v. F.D.I.C.**, 583 F.3d 586, 593 (8th Cir. 2009); **Silvas v. E*TRADE Mortg. Corp.**, 514 F.3d 1001, 1005 (9th Cir. 2008).

In **Jones v. Home Loan Inv., FSB**, No. 2:09-0537, 2010 WL 1238437, at *4 (S.D. W.Va. Mar. 22, 2010), the Honorable Judge John T. Copenhaver, Jr. concisely summarized the process of applying OTS's analysis:

> If a court performs the first step of the OTS's analysis and concludes that the state law bases for plaintiff's claims fall within section 560.2(b), plaintiff's claims are preempted by HOLA. Alternatively, if the court concludes that the state law claim falls outside of section 560.2(b), it must then determine whether plaintiff's claims clearly fit within the confines of permissible state law claims laid out in section 560.2(c). In order to fit within these confines, the court must be satisfied that the state law involved has, at most, only an incidental effect on lending operations.

### III.  Analysis

OneWest moves to dismiss all three counts of the plaintiffs' Complaint. Specifically, OneWest contends that Counts I and II must fail because the plaintiffs' state law claims are preempted by the HOLA, and their federal law claims are either inadequately pled or time-barred. According to OneWest, Count III must also fail because no enforceable contract

exists to support a breach of contract claim.

### A. Count I: WVCCPA, WV Mortgage Act, TILA, HOEPA, and RESPA

In Count I, the plaintiffs assert claims based upon the origination of their November 2004 loan with IndyMac. These claims arise under state and federal law. The Court will now consider each claim in turn.

#### 1. State Law Claims

Count I alleges that IndyMac led the plaintiffs to believe that "they would be better off refinancing their debt and that this loan was under fair terms of repayment without ballooning interest or pre-payment penalties" and that IndyMac directed the plaintiffs to "sign papers without [providing] copies in advance of the closing." (Id. at ¶¶ 21, 24). As the plaintiffs fail to cite which WVCCPA and WV Mortgage Act provisions IndyMac violated, this Court will construe these allegations as attempting to support claims under W.Va. Code §§ 46A-2-121, 46A-3-110(b), 46A-4-110a, and 31-17-8(m)(10), which respectively prohibit inducement by unconscionable conduct, agreements containing impermissible prepayment penalties, agreements containing impermissible balloon payments, and any knowing violations of the WVCCPA.

In considering whether any of these claims are preempted by the HOLA, the Court will first determine whether a claim matches one of the examples provided in section 560.2(b). If so, the claim is preempted. Alternatively, the Court will determine whether a claim fits within the permissible state law claims laid out in section 560.2(c), by analyzing whether the state law has, at most, only an incidental effect on lending.

This Court finds that Count I implicates several of the illustrative examples of preempted state laws outlined in section 560.2(b). In particular, Count I implicates the

loan's origination, § 560.2(b)(10); the loan's terms of credit, including adjustments to the interest rate, § 560.2(b)(4); and the loan's fees, including prepayment penalties, § 560.2(b)(5). Alternatively, this Court finds that regulating a federal savings bank's conduct at a closing, as well as the terms included in its loan agreements, would more than incidentally affect lending. Inasmuch as the OTS has the sole authority to impose these regulations upon federal savings banks, the plaintiffs' state law claims apparently based upon W.Va. Code §§ 46A-2-121, 46A-3-110(b), 46A-4-110a, and 31-17-8(m)(10) are preempted by section 560.2(a). *See* **Jones v. Home Loan Inv., FSB**, No. 2:09-0537, 2010 WL 1238437, at *8-9 (S.D. W.Va. Mar. 22, 2010) (finding § 46A-2-121 preempted by HOLA). Accordingly, Count I is **DISMISSED WITH PREJUDICE** inasmuch as it is based upon these provisions.[2]

### 2. Federal Law Claims

Count I also alleges that IndyMac failed to provide and/or explain the applicable TILA rescission notices, the HOEPA disclosures, and the RESPA "Good Faith Estimate" disclosures. For the reasons stated below, however, each of these claims fails.

First, the TILA and HOEPA claims are barred by the statutes of limitation outlined in 15 U.S.C. §§ 1640(e) and 1635(f). In **Brackett v. Corinthian Mortg. Corp.**, 09-00098, 2010 WL 1254705, *7 (Bankr. N.D. W.Va. Mar. 25, 2010), the Honorable Bankruptcy Judge Patrick M. Flatley summarized the applicable time limitations as follows:

> A cause of action for damages under TILA must be brought "within one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e), which

---

[2]In addition, this Court notes that the WVCCPA claims in Count I are time-barred. *See* W.Va. Code § 46A-5-101 (one-year statute of limitations for non-revolving consumer loans).

is "no later than the date the plaintiff enters the loan agreement." ***Tucker v. Beneficial Mortg. Co.***, 437 F.Supp.2d 584, 589 (E.D. Va. 2006).  A cause of action to enforce an obligor's right of recision under TILA "shall expire three years after the date of the consummation of the transaction." 15 U.S.C. § 1635(f).

In the instant case, the plaintiffs allege their loan originated on November 23, 2004. The plaintiffs filed the Complaint on March 1, 2010, over five years later.  Thus, like in ***Brackett***, the plaintiffs' TILA and HOEPA claims are barred unless the circumstances justify equitable tolling.  However, the Court finds no bases upon which equitable tolling is justified.  The "three-year limitations on actions for rescission is not a statute of limitations subject to tolling, but rather it is a statute of repose, which creates a substantive right, not subject to tolling." ***Brackett***, 2010 WL 1254705, *7 (citing ***In re Cmty. Bank of N. Va. & Guaranty Bank Second Mortg. Litigation***, 467 F.Supp.2d 466, 481 (W.D. Pa. 2006)). Further, while equitable tolling can apply to the one-year period in section 1640(e), "to withstand a motion to dismiss, [the plaintiff] must set forth facts sufficient to show the necessary elements of the doctrine are present . . .." ***Id.***; *see also* ***Chao v. Va. DOT***, 291 F.3d 276, 283 (4th Cir. 2002) ("The circumstances under which equitable tolling has been permitted are . . . quite narrow.").  Here, the plaintiffs have not alleged any conduct that would warrant equitable tolling.  As a result, the plaintiffs' TILA and HOEPA claims are time-barred.

Moreover, insofar as the plaintiffs' reference to the "Good Faith Estimate" is an attempt to plead RESPA, said claim must also fail.  Specifically, the plaintiffs allege that "IndyMac, FSB, through its agents, failed to provide and/or explain the required number of copies of the Good Faith Estimate." ([Doc. 1] at ¶ 23).  OneWest argues that said claim

must fail as RESPA provides no private right of action in connection with the "Good Faith Estimate." ([Doc. 10] at 13). The term, "Good Faith Estimate," is a term of art under 12 U.S.C. § 2604(c) of RESPA and the Department of Housing and Urban Development Regulation X, 12 C.F.R. § 3500.7. Thus, the Court construes the failure to provide a Good Faith Estimate as an allegation that IndyMac violated section 2604. RESPA, however, provides no private right of action for violations of section 2604. See **Brackett**, 2010 WL 1254705, *8; **Collins v. FMHA-USDA**, 105 F.3d 1366, 1368 (11th Cir. 1998). As such, the plaintiffs' cause of action for failure to provide and/or explain the Good Faith Estimate under RESPA must fail. Accordingly, Count I is **DISMISSED WITH PREJUDICE** inasmuch as it attempts to state claims pursuant to TILA, HOEPA, and RESPA.

### B. Count II: WVCCPA, WV Mortgage Act, TILA, and HOEPA

In Count II, the plaintiffs assert predatory lending claims based upon the origination of their loan with IndyMac. These claims arise under state and federal law. The Court will now consider each claim in turn.

#### 1. State Law Claims

Count II alleges that the terms of the Note appear to provide for a payment schedule that requires monthly payments that do not result in continuous monthly reduction of the original principal in violation of W.Va. Code §§ 31-17-8(m)(7) and 46A-4-109(5)(E). Moreover, Count II alleges that the loan contains excessive fees and costs and finance charges. Finally, Count II alleges that the plaintiffs were induced into this unconscionable loan in violation of W.Va. Code § 46A-2-121.

Again, in considering whether any of these claims are preempted by the HOLA, the

Court will first determine whether a claim matches one of the examples provided in section 560.2(b). If so, the claim is preempted. Alternatively, the Court will determine whether a claim fits within the permissible state law claims laid out in section 560.2(c), by analyzing whether the state law has, at most, only an incidental effect on lending.

As in Count I, these claims fall within the examples listed in section 560.2(b). Specifically, Count II implicates the origination of the loan, the terms of credit, and loan-related fees. *See* §§ 560.2(b)(4), (5), and (10). Alternatively, this Court finds that regulating the terms a federal savings bank may include in its loan agreements would more than incidentally affect lending. Inasmuch as the OTS has the sole authority to impose these regulations upon federal savings banks, the plaintiffs' claims based upon W.Va. Code §§ 31-17-8(m)(7), 46A-4-109(5)(E), and 46A-2-121 are preempted by section 560.2(a). *See* **Brackett**, 2010 WL 1254705, *6 (finding §§ 31-17-8(m)(7) and 46A-4-109(5)(E) preempted by HOLA). Accordingly, Count II is **DISMISSED WITH PREJUDICE** inasmuch as it is based upon these provisions.[3]

### 2. Federal Law Claims

Count II alleges that the failure of the loan's payment schedule to result in continuous monthly reduction of the original principal violates TILA and HOEPA. In addition, Count II alleges that IndyMac's inducement of the plaintiffs to enter an unconscionable loan agreement violates TILA and HOEPA. However, for the reasons explained in section III. A. 2. of this Order, the plaintiffs' TILA and HOEPA claims are time-barred. Accordingly, Count II is **DISMISSED WITH PREJUDICE** inasmuch as it attempts

---

[3]Once more, this Court notes that the plaintiffs' WVCCPA claims are time-barred. *See* W.Va. Code § 46A-5-101.

to state claims pursuant to TILA and HOEPA.

### C. Count III: Breach of Contract

In Count III, the plaintiffs assert that OneWest breached an August 2009 agreement to modify the terms of the plaintiffs' November 2004 loan. OneWest argues the modification never became enforceable, and thus, cannot support a claim for breach of contract. For the reasons explained below, this Court finds that the plaintiffs have sufficiently stated a breach of contract claim.

According to the plaintiffs' allegations, which control at this point of the case, OneWest offered the plaintiffs a loan modification on August 14, 2009. The offer was conditional upon: (1) the plaintiffs' signature and return of the Modification Agreement along with a check for $2,806.13, representing the first modified monthly payment; and (2) verification that the plaintiffs' income qualifies for loan modification. The offer stated that it would expire on August 24, 2009. The plaintiffs then allege that they accepted the offer on August 21, 2009, and began performance by "comply[ing] with *all* of the terms and conditions of the modified contract including timely delivery and payment made to [OneWest]." ([Doc. 1] at ¶ 37) (emphasis added). Finally, the plaintiffs allege that OneWest breached its obligations by rescinding the Modification Agreement, causing the plaintiffs financial and emotional harm. Based upon this alleged breach, the Court finds that the plaintiffs have sufficiently stated a claim for breach of contract.[4] Accordingly, the

---

[4] This Court is not persuaded by OneWest's argument that this claim is barred by West Virginia's statute of frauds, W.Va. Code § 55-1-1, because OneWest allegedly did not sign the Modification Agreement. Even assuming OneWest did not sign the agreement does not require dismissal. The plaintiffs allege that they sent OneWest the first modified monthly payment, thus commencing performance. West Virginia recognizes part performance as an exception to the statute of frauds. *See **Messer v. Runion***, 210 W.Va.

plaintiffs' breach of contract claim **MAY PROCEED**.[5]

## CONCLUSION

For the foregoing reasons, the Court finds that the defendant's Motion to Dismiss [Doc. 9] should be **GRANTED IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: June 16, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

102, 105, 556 S.E.2d 69, 72 (2001).  As such, this Court cannot find that the plaintiffs have failed to state a plausible breach of contract claim.

[5]In so concluding, this Court recognizes that states cannot regulate the terms of the loan agreements entered into by federal savings banks.  However, even a federal savings bank must abide by its agreements.  When it does not, "[i]t would be surprising for a federal regulation to forbid [a] homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract."  *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 643-644 (7th Cir. 2007).